## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHARON WILLIAMSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **CIVIL ACTION NO. 14-0552-CG-C** |
| | ) | |
| **BALL HEALTHCARE** | ) | |
| **SERVICES, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motion for partial summary

judgment (Doc. 62), Defendant's opposition thereto (Doc. 68), Plaintiff's reply (Doc.

71), Plaintiff's motion to strike (Doc. 69), and Defendant's response to the motion to

strike (Doc. 73).  For reasons that will be explained below, the Court finds that

Plaintiff's motion to strike and motion for summary judgment both are due to be

denied.

## FACTS

This case arises from Plaintiff's termination from the Defendant Company,

Ball Healthcare Services, Inc., on September 3, 2013. (Doc. 1, ¶ 9).  The Complaint

alleges that Plaintiff was diagnosed with Rheumatoid Arthritis in May 2013 and

that she is a qualified individual under the Americans with Disabilities Act, Title 42

U.S.C. § 12101 et seq., ("ADA").  Plaintiff claims the Defendant discriminated

against her on the basis of her disability in violation of the ADA.  She seeks lost

wages, lost benefits, punitive and/or nominal damages, attorney's fees and costs, an

injunction and a declaratory judgment. (Doc. 1).  In its Amended Answer (Doc. 42), Defendant raises the affirmative defense of after-acquired evidence, asserting that it discovered evidence on August 12, 2015, that Plaintiff intentionally provided misleading, incomplete and false information as part of the application process for employment with the Defendant Company.  Defendant asserts that if it had discovered the evidence before hiring Plaintiff, it would have refused to hire Plaintiff and, if discovered after she was hired, it would have terminated her employment.  As such, Defendant contends that Plaintiff is barred from obtaining injunctive relief, reinstatement to her employment with Defendant Company, the recovery of front pay or employment benefits and compensatory damages after August 14, 2015, the date that Administrator Mary Kay Polys received and reviewed the evidence and made the decision that Defendant Company would not have hired or would have terminated Plaintiff's employment immediately if it had been discovered.

Plaintiff was previously employed at an assisted living facility called The Blake at Malbis, LLC ("The Blake") as the Director of Wellness beginning on or about July 5, 2010. (Doc. 64-4, p. 2; Doc. 68-3, ¶ 2).  Plaintiff contends that she worked under a verbal agreement with the owner that she would work for one year at which time they would readdress issues of salary and whether she would remain employed there. (Doc. 64-2, pp. 3-4).  However, the COO and co-owner of The Blake, Glenn Barclay, avers that Plaintiff was an at-will employee and that they had no written or verbal employment contract with Plaintiff. (Doc. 68-3, ¶ 2).

On September 20, 2010, the Alabama Department of Public Health ("ADPH") conducted a pre-license survey of The Blake and based on the initial survey the ADPH denied The Blake a license to operate. (Doc. 68-3, ¶ 3). The Blake subsequently corrected the alleged deficiencies and obtained a license as a specialty care assisted living facility with Plaintiff as the Director of Wellness. (Doc. 68-3, ¶ 3). The ADPH pre-license survey cited a number of alleged deficiencies, including some directly related to Plaintiff's performance of her job duties as the Director of Wellness. (Doc. 68-3, ¶ 4). The ADPH initiated a complaint against Plaintiff's nursing license with the Alabama Board of Nursing based on the survey findings and the Alabama Board of Nursing notified Plaintiff and The Blake of the investigation. ((Doc. 64-3, p. 19; Doc. 68-3, ¶ 4).

On May 19, 2011, the ADPH conducted a second survey of The Blake. (Doc. 68-3, ¶ 5). Again, deficiencies were cited relating to Plaintiff's area of responsibility, including the failure to perform comprehensive assessments on residents with significant health status changes. (Doc. 68-3, ¶ 5). Again, Plaintiff and The Blake were notified of a complaint and investigation against Plaintiff's nursing license. (Doc. 64-3, p. 20; Doc. 68-3, ¶ 5). To avoid the possibility of losing its license, The Blake entered into a Consent Agreement with the ADPH, dated June 24, 2011, under which The Blake relinquished the management and operation of the facilities to ClearPoint Solutions, LLC. (Doc. 68-3, ¶6). Under the Management Agreement, ClearPoint Solutions assumed full authority and control in the operations of The Blake facilities, including hiring and terminating staff. (Doc. 68-3, ¶ 6).

3

Shortly before June 20, 2011, Mr. Barclay advised Plaintiff that it would no longer be responsible for the management of the facilities and that her employment would terminate as a result. (Doc. 68-3, ¶ 8).  Plaintiff gave Mr. Barclay a memo stating that she had been a valued employee, she "may never find another job as Director of Wellness again due to the investigations" and that she would "submit a resignation letter with the guarantee of three months' severance pay, PTO (Paid time off, and the attorney to continue to represent [her] at no cost in matters arriving [sic] before the Alabama Board of Nursing that have arisen or may arise during [her] employment at The Blake at Malbis." (Doc. 64-3, p. 21; Doc. 68-3, ¶ 8). Plaintiff reportedly also told Mr. Barclay that a voluntary resignation would assist her in seeking alternate employment. (Doc. 68-3, ¶ 9).  The Blake agreed to Plaintiff's proposal and Mr. Barclay signed a copy of Plaintiff's memo. (Doc. 68-3, ¶ 9).  That same day, June 20, 2011, Plaintiff provided The Blake with her written resignation. (Doc. 68-3, ¶ 9).  Plaintiff's personnel forms indicate that she was eligible for re-hire "with COO approval" and Mr. Barclay confirms that if Plaintiff had applied for re-hire, he would make the determination at that time whether to approve her re-hire. (Doc. 68-3, ¶ 10).  The Alabama Board of Nursing notified Plaintiff that she was required to notify them of any nursing employment, application for nursing employment or acceptance of nursing employment but the Alabama Board of Nursing did not expressly instruct her to provide notice of the pending investigations to potential employers. (Doc. 64-1, pp. 61-62; Doc. 64-2, pp. 9-10).

Plaintiff accepted the position of Assistant Director of Nursing at the Defendant's Robertsdale facility on November 2, 2011. (Doc. 64-1, p. 92; Doc. 64-3, pp. 11-12).  At the time Plaintiff was hired, Sharon Prince-Moore was the Defendant's Vice President of Special Services, Mary Kay Polys was the Defendant's Administrator, and Sandy Daigle was the Defendant's Director of Nursing at the Robertsdale Healthcare Center.  (Doc. 64-1, pp. 4-5; Doc. 64-4 p. 3; Doc. 64-5, pp. 3-4).  Moore was provided Plaintiff's resume via a staffing company and Plaintiff was selected and interviewed by Moore. (Doc. 64-4, pp. 5-6).  Moore testified that she always asks about a candidate's regulatory history because they want to know if the candidate's lack of structure or administrative capabilities created issues or did they "just happen." (Doc. 64-4, pp. 11-12).  Plaintiff answered that it was common knowledge that The Blake had regulatory issues and stated that she had inherited some or there were "challenges" when she arrived at the facility. (Doc. 64-4, p. 12).  The Plaintiff shared some things that she felt she had done to improve upon those challenges. (Doc. 64-4, p. 12).  Plaintiff told Moore that there had been a difficult survey during her time there, but that everything was clear at this point or had cleared before she left and ended her contract. (Doc. 64-4, p. 12).  Plaintiff then had a clinical interview, after which Moore followed up with the staffing company to notify them of their requirements and referred Plaintiff to the Robertsdale Administrator, Mary Kay Polys for an interview. (Doc. 64-4, pp. 7-9; Doc. 64-1, pp. 35-36).  Moore informed Polys of Plaintiff's prior employment with The Blake and relayed what Plaintiff had told her about the regulatory issues at The Blake. (Doc.

64-4, pp. 10-11).

Plaintiff had a lunch interview with Polys and Moore during which Plaintiff's employment history was discussed, with the majority of the discussion focusing on the issues Plaintiff encountered while working at The Blake. (Doc. 64-4, pp. 15-17). Plaintiff was asked about why she left The Blake and she shared that The Blake had been a challenge and that it was not long-term care and she wanted to get back into long-term care. (Doc. 64-4, pp. 16-17).  They talked about assessments and Plaintiff told them essentially what she had already told Moore at their prior meeting. (Doc. 64-4, p. 17).  Moore and Polys did not ask Plaintiff about her licensure status, because that information is on their application and they check online with the Alabama Board of Nursing registry. (Doc. 64-4, p. 18; Doc. 64-1, p. 10-11).  The website does not show pending matters, only final determinations. (Doc. 64-1, p. 54).  At the time of her hire, Plaintiff's nursing license was in good standing and had not been disciplined. (Doc. 64-1, pp. 53, 100).  A third-party-facilitated background check was provided to Moore and Polys and contained no information that resulted in a rescinding of the job offer (Doc. 64-1 pp. 46-48, 93-101; Doc. 64-4, p. 22).  Polys made the final decision to hire Plaintiff as the Assistant Director of Nursing. (Doc. 68-4, ¶ 2).

Plaintiff began her employment with Defendant on November 14, 2011. (Doc. 64-1, pp. 49-50).  Plaintiff told the Defendant's Director of Nursing, Sandy Daigle, that she was afraid she would lose her license working at The Blake and that she did not think it was run correctly. (Doc. 64-5, pp. 5-6).  Plaintiff did not tell Daigle of

6

any pending litigation going on with The Blake or Plaintiff. (Doc. 64-5, p. 6).

Plaintiff did not actually complete her Application for Employment with the

Defendant until November 14, 2011, after she began work there. (Doc. 64-1, pp. 31,

43-44, 87-90).  If something had come to light as a result of the application being

inaccurate, incomplete or misleading, Defendant had the ability to rescind the offer

of employment. (Doc. 64-1, p. 44).  Plaintiff's Application listed her reason for

leaving The Blake as "End of Contract." (Doc. 64-1, p. 88).  The Application signed

by Plaintiff includes the following promise:

> I promise that the information I gave in this employment application is
> true and complete.  I understand that the Company, may refuse to hire
> me, or if I am hired, may discharge me if I gave false, misleading or
> incomplete information in this application.

(Doc. 64-1, p. 90).  The Application does not request information regarding the

applicant's licensure status or any pending investigations related thereto. (Doc. 64-

1, pp. 87-90).

Plaintiff also signed an Acknowledgment, dated November 14, 2011,

confirming that she had read, understood and agreed to comply with the contents of

the Employee Handbook for the Defendant Company. (Doc. 68-4, ¶ 5 & p. 11).  The

employment policies in the Employee Handbook include a disciplinary rule

subjecting an employee to disciplinary action "including discharge" for "Dishonesty."

(Doc. 68-4, ¶ 5 & pp. 8-9).  The Handbook expressly defines "Dishonesty" to include

"providing false information for any employment related purpose." (Doc. 68-4, ¶ 5 &

p. 10).  Polys regards the information Plaintiff provided in the Employment

Application and during her employment interview process to constitute "dishonesty" in violation of the Handbook policy. (Doc. 68-4, ¶5).

The Alabama Board of Nursing investigation of Plaintiff arising from the regulatory issues at The Blake was not concluded until September 2014. (Doc. 64-2, pp. 10-11).  Plaintiff entered into a Consent Order/plea bargain resulting in a two-week probationary status of her nursing license from September 30, 2014 through October 14, 2014, during which time she could not serve in a supervisory nurse position. (Doc. 64-2, pp. 11-17; Doc. 64-1, pp. 104-113).  If Plaintiff had still been working for Defendant at the time of her probationary status, Defendant could have accommodated her for the two weeks, but Polys is not sure that they would have, as a determination would have had to be made whether Plaintiff would be brought back into a leadership role knowing what was in the consent order. (Doc. 64-1, pp. 56-59).  Polys testified that they would have looked at the findings from the Board and how that related to the position they had Plaintiff in to determine whether to terminate Plaintiff or to allow her to keep the same job. (Doc. 64-1, pp. 56-60).  If they had received a report that an employee had a pending issue and that no determination had been made, they would call the Board to get an idea of the issues, discuss them with the employee, and handle it on a case-by-case basis. (Doc. 64-1, p. 55).  It would not be an automatic termination unless the Board said that the employee was told to inform the employer and the employee had failed to do so. (Doc. 64-1, p. 55).  According to Polys, if she had obtained all of the information that had come to light about Plaintiff's prior employment and her licensure issues, Polys

would not have hired Plaintiff as the Assistant Director of Nursing, a high-level supervisory position, because Plaintiff provided false, misleading and incomplete information during the hiring process. (Doc. 68-4, ¶ 5).  Polys states that if she had discovered this information after Plaintiff was hired and was serving as the Assistant Director of Nursing, Polys would have terminated Plaintiff's employment immediately for providing false, misleading and incomplete information in violation of the Company's policies. (Doc. 68-4, ¶ 5).

Defendant accommodated three other nurses who had been placed on probationary status by the Board, Elizabeth Griffith, Jessica Pharr and Melanie Bayha.  Griffith received disciplinary action from the Board during her employment with the Defendant and remained employed. (Doc. 64-5, pp. 17-19).  Griffith let Polys know that she had an investigation pending. (Doc. 64-1, p. 55).

The Defendant knew that Pharr's license was on probationary status and that she had been fired from her previous employer at the time that they hired her, but they did not put her in a supervisory position. (Doc. 64-5, pp. 7-13).  The information was all on her application and she was very up front and open about what had happened. (Doc. 64-5, pp. 12-14; Doc. 64-1, pp. 16-17).  Polys was concerned about Pharr's issues, but ultimately agreed to hire her. (Doc. 64-5, p. 15; Doc. 64-1, p. 17).

Bayha received disciplinary action from the Board during her employment with the Defendant resulting in her license being placed on probationary status for a period of five years, and she remained employed. (Doc. 64-5, pp. 15-19).

9

# DISCUSSION

## A. Motion to Strike

Plaintiff moves to strike portions of the declaration of Mary Kay Polys (Doc. 68-4), which was submitted in opposition to Plaintiff's motion for partial summary judgment.  Plaintiff asserts that the declaration contains irrelevant, vague, ambiguous and conclusory statements, hearsay, statements that are not based on Polys' personal knowledge and statements that contradict Polys' prior deposition testimony.

Plaintiff first contends that the entire declaration should be stricken because it does not expressly aver that the content is based on Polys' personal knowledge. Affidavits or declarations can be "used to support or oppose a motion" as long as they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matter stated." FED. R. CIV. P. 56(c)(4). Plaintiff has offered no authority that requires a declaration to expressly state that it is made on personal knowledge, and Rule 56 does not specify that such language must be included.  The declaration as a whole should not be stricken for failure to expressly aver that it is based on personal knowledge.

Plaintiff next objects to statements by Polys that she relied upon information provided by Sharon Prince-Moore about information Plaintiff provided in her

interview with Moore. Polys avers in her declaration that she relied on this information in making the decision to hire Plaintiff. Plaintiff contends that statements by Moore about what Plaintiff said constitutes hearsay and that Polys does not have personal knowledge of the information. Although Plaintiff argues otherwise, the Court finds that this information was not offered for the truth of the matter stated, but rather to show the basis for Polys' decision to hire Plaintiff. <u>See Goode v. Wild Wing Cafe</u>, 588 F. App'x 870, 875 (11th Cir. 2014) ("such testimony was proffered as evidence of Wings' rationale for its decision to terminate Mr. Goode, rather than for the truth of the matters asserted" (citing FED. R. EVID. 801(c) and <u>Moore v. Sears, Roebuck & Co.</u>, 683 F.2d 1321, 1323 n. 4 (11th Cir.1982)). The Court will consider the statements on that basis and not for the truth of the matters asserted in the statements. The Court notes, however, that the information provided by Plaintiff to Moore during the interview process has been offered through other evidence that has not been objected to by the parties.

Plaintiff also objects to statements by Polys about information that has been provided to her during this litigation concerning Plaintiff's employment at The Blake and the Alabama Nursing Board's investigation of Plaintiff. Again the information about Plaintiff's employment and investigation were not offered for their truth, but to show the basis for Polys' conclusion that if she had been provided with this information earlier, she would not have hired Plaintiff, or would have terminated Plaintiff if she had already been hired at the time the information came to light. Polys even states in the declaration that she has no first hand knowledge

of these facts.  Likewise, Polys' statement about what she believes the information shows is offered to show the basis of Polys' conclusion.   Plaintiff is correct that "Rule 56(e)'s personal knowledge requirement prevents statements in affidavits that are based, in part, 'upon information and belief' - instead of only knowledge- from raising genuine issues of fact sufficient to defeat summary judgment." Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002) (citations omitted). "Likewise, an affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact." Id. at 1278-79 (citations omitted).   However, Polys' belief statements are only offered to show Polys' rational for determining that she would not have hired or would have terminated Plaintiff if she had been presented with the information earlier. See Letson v. Liberty Mut. Ins. Co., 523 F. Supp. 1221, 1226 (N.D. Ga. 1981) ("Defendant characterizes the statement as hypothetical, speculative, and conclusory. However, a statement by a person about his state of mind or intent is admissible as evidence of such intent. This is true even where a statement is deemed to be an opinion on an ultimate issue in the case." (citations omitted)).  Polys' statements, such as that she "believe[s] [Plaintiff] intentionally concealed this information" cannot be used to show Plaintiff's mental state, but only to show Polys' understanding of the information she reviewed and her reasons for her determination. The information Polys lists that she states was provided to her during the course of the lawsuit cannot be used to show the truth of the information.  Polys has not demonstrated that she has personal knowledge of those

facts, they are merely what she reviewed and based her determination on.

Lastly, Plaintiff objects to statements by Polys that Plaintiff contends contradict Polys' prior deposition testimony.  Affidavit statements may be stricken as a sham when they directly contradict, without explanation, a witness's previous sworn testimony. See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003); see also Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987) ("[A] party cannot give clear answers to unambiguous questions in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction." (internal quotations and citation omitted)). When an affidavit is contradictory to the extent that it is "inherently inconsistent" with deposition testimony, a court should disregard that affidavit as a sham and exclude it from the evidence considered in a motion for summary judgment. Rollins, 833 F.2d at 1530; Lane v. Celotex Corp., 782 F.2d 1526, 1531 (11th Cir. 1986).

Plaintiff objects to the following statement as contradictory:

> At [the time I made the final decision to hire Plaintiff], the only information available to me about her previous employment as the Director of Wellness with The Blake at Malbis, an assisted-living nursing facility in Daphne, Alabama, was the information she reported on her Employment Application that her "reason for leaving" The Blake was "end of contract" and the information Ms. Williamson provided during her employment interviews.

(Doc. 68-4, ¶ 2).  Plaintiff contends the above statement is contradictory because Polys' deposition testimony makes clear that Plaintiff did not fill out an Employment Application until after she was hired.  However, the Court does not find the statement to be directly contradictory.  As Polys explained at her

deposition, although Plaintiff did not fill out the Employment Application until after she started work, if something had come to light as a result of the application being inaccurate, incomplete or misleading, Defendant had the ability to rescind the offer of employment. Thus, although Polys did not rely on the Employment Application before she made the initial job offer, it was still considered in the final determination of whether she would be allowed to have or continue in the job.

Plaintiff also objects to the following statement as contradictory:

> During the course of Ms. Williamson's lawsuit against Ball HealthCare, I have been provided information and documents that to me, clearly show that Ms. Williamson provided false, incomplete and misleading information during the employment process when she was hired as the ADON for RHCC.

(Doc. 68-4, ¶ 3). Plaintiff asserts that the above statement is contradictory because Plaintiff was never asked about pending investigations or her licensure status during the interview process, Polys stated that she did not have any reason to believe Plaintiff would not have been forthcoming at the time she was hired, and because Polys testified that she did not know whether Plaintiff's reason for leaving the Blake was false or not and did not know of any other false statements in Plaintiff's Employment Application. The Court finds the testimony is not directly contradictory. The fact that Polys did not specifically ask Plaintiff about pending investigations or her licensure does not forego the possibility that Plaintiff provided false, incomplete and misleading information. Whether or not Polys believed Plaintiff would have been forthcoming during her interview does not contradict Polys' declaration statement. Lastly, the fact that Polys does not know for a fact, in

other words that she does not have first hand knowledge of the reason Plaintiff left the Blake, does not preclude Polys from concluding from the information she reviewed that Plaintiff's stated reason was false, incomplete or misleading.

Plaintiff also objects, as contradictory, to Polys determination that if she had obtained the information about Plaintiff she would not have hired her or would have terminated her from employment for providing false, misleading and incomplete information.  Plaintiff points to Polys' testimony about the company's practices when they receive credible information that there is a licensure issue. Polys explained at her deposition that if she received a report of some pending issue and no determination had been made, she would call the Board and get an idea what the issues were, have a discussion with the employee, and handle it on a case-by-case basis.  Polys testified that it would not be an automatic termination unless the employee was told to inform the employer and had failed to do so.  However, in Plaintiff's case, Polys did not need to investigate the issue herself. Polys was later provided with information about the investigation that was pending at the time Plaintiff applied for the position and she reviewed an abundant amount of information about the circumstances of Plaintiff's prior employment and Plaintiff's licensure issues.  The fact that any determination would be made on a case-by-case basis does not preclude Polys from making a determination after she reviewed the relevant information.  For all of the reasons discussed above, the Court denies Plaintiff's motion to strike the declaration of Mary Kay Polys.

**B. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on

16

the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies her initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## C. After-Acquired Evidence Defense

Plaintiff contends that Defendant cannot prevail on its affirmative defense of after-acquired evidence.   The doctrine of after-acquired evidence was established by the Supreme Court in McKennon v. Nashville Banner Pub. Co., 513 U.S. 352 (1995). "After-acquired evidence" is evidence of an employee's wrongdoing that is not revealed until after the employee's discharge. Id. at 354.  Not only is evidence of wrongdoing during a plaintiff's employment relevant to the after-acquired evidence defense, but also evidence of "the employee's misrepresentations in a job application or resume" is relevant. Wallace v. Dunn Constr. Co., 62 F.3d 374, 379 (11th Cir. 1995).  "[T]he after-acquired evidence does not bar recovery, but merely affects the remedy." Id. at 381 (quoting McKennon, 513 U.S. at 358, 359).  "The [Supreme] Court held that if an employer 'establish[es] that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge,' an award of back pay should generally be limited to the period of time 'from the date of the unlawful discharge to the date the new information was discovered.' " Holland v. Gee, 677 F.3d 1047, 1064–65 (11th Cir. 2012) (quoting McKennon, 513 U.S. at 362-63). "Under the doctrine of after-acquired evidence, the burden is on the employer to prove that 'the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone.' " Id. at 1065 (11th Cir. 2012)

(quoting <u>McKennon</u>, 513, U.S. at 362-63).  The misconduct must be so grave that immediate discharge would have followed its disclosure. <u>Dunn Const.</u>, 62 F.3d at 379 (quoting <u>McKennon</u>, 513 U.S. at 356).

For Defendant's after-acquired evidence defense to survive summary judgment, Defendant must show that, looking at the evidence in the light most favorable to Defendant, there is a genuine issue of fact regarding whether 1) Plaintiff committed a wrongdoing, and 2) the wrongdoing was of such severity that the Defendant would have terminated Plaintiff had it known of the misconduct. <u>See</u> <u>McKennon</u>, 513 U.S. at 361–62.  The question here is whether there is a genuine issue of fact regarding 1) whether Plaintiff provided false, misleading and incomplete information during the hiring process or on her Application for Employment and 2) whether the misconduct was severe enough that Defendant would have terminated Plaintiff immediately upon discovering Plaintiff provided the alleged false, misleading and incomplete information.

As to whether the information was false, misleading or incomplete, Plaintiff stated on her Application for employment that she left The Blake because it was "end of contract."  While Plaintiff testified that she had verbally entered into a one-year contract of employment, Mr. Barclay averred that there was no employment contract of any kind.  There is evidence that Plaintiff was to be terminated because, due to the problems with the ADPH survey, management of the facilities was going to change and Plaintiff's employment would terminate as a result.  Plaintiff requested that she be allowed to resign instead, but there is clearly evidence that it

was not Plaintiff's choice to leave and that she did not leave because her contract had ended.

Defendant asserts that Plaintiff was also misleading in her interview when she reported that she had inherited regulatory issues while working at The Blake and did not disclose the issues that related to her own deficiencies or the fact that she had a pending investigation against her.  There is evidence that Moore and Polys were very interested in Plaintiff's regulatory history and that they had discussed with Plaintiff her regulatory history.  It was an important issue in their consideration of any candidate.  There is no evidence that Plaintiff was required by the Board to disclose the information or that Plaintiff was asked a direct question about her licensure status and lied, but there is evidence that her statements about those issues were incomplete and misleading.  Plaintiff also reportedly told Moore and Polys that the surveys had cleared before she left The Blake, whereas the evidence indicates the surveys had in fact not cleared.

According to Polys, who made the decision to hire Plaintiff, the false, incomplete, and misleading information Plaintiff provided violated the Employee Handbook and the promise Plaintiff signed that the information she gave in her Employment Application was true and complete.  The Employee Handbook states that such misconduct will result in disciplinary action that may include discharge.  Similarly, the promise Plaintiff signed at the end of her Application states that if she gives false, misleading or incomplete information in the Application, the Company may refuse to hire her or, if hired, may discharge her.  An employee's

20

failure to disclose that she had resigned in lieu of being fired is a wrongdoing that has been found in at least one case to be sufficiently severe that the company would have terminated the employee immediately had it known. See e.g. Forte v. W. Florida Med. Ctr. Clinic P.A, 2015 WL 2086231, at *6 (N.D. Fla. May 5, 2015) (finding that the plaintiff engaged in wrongdoing by failing to disclose on her employment application that she had been asked to resign in lieu of being fired by her previous employer and finding that the wrongdoing was of such severity, based on the employer's employment practices and policies, that the defendant would have terminated her on those grounds alone had it known about it prior to the time it discharged the plaintiff.).  The import of Plaintiff's alleged lie regarding why she left The Blake is compounded by the allegations that Plaintiff also gave incomplete or misleading information about her regulatory history at The Blake and about the extent of her responsibility for the license issues at The Blake.  Polys' and Moore's testimony indicates that Plaintiff's ADPH regulatory history was key information they considered in deciding whether to hire Plaintiff.  Plaintiff reportedly concealed the issues by telling them that the ADPH surveys at The Blake had cleared and that Plaintiff voluntarily chose to leave her position at The Blake.  Such lies would likely head off further questions about Plaintiff's regulatory history and license status. Polys has averred that if she had been made aware of all of the facts and circumstances concerning Plaintiff's employment and regulatory history at The Blake, such as that a number of the deficiencies at the Blake were attributed to Plaintiff, that the issues at The Blake were not cleared, that Plaintiff did not have

an employment contract with and did not voluntarily choose to leave The Blake, and that there were pending investigations against Plaintiff, then she would not have hired Plaintiff, or if she discovered the information after Plaintiff became employed, she would have terminated Plaintiff.  Such evidence has been found to support the application of the after-acquired evidence doctrine where employment history indicated the Defendant had previously terminated others for falsifications or misrepresentations.  See e.g. Yeary v. Florida Dep't of Corr., 1997 WL 284648, at *5 (M.D. Fla. May 13, 1997) (granting summary judgment in favor of defendant on issue of after-acquired evidence where Defendant submitted an affidavit stating that it would have immediately terminated the plaintiff as soon as it learned of the omissions/falsifications in her Application just as it had previously done to similarly situated employees for analogous acts of falsification and/or misrepresentation). Plaintiff attempts to discredit Polys testimony by pointing to her testimony that when licensure issues came to light they would address them on a case-by-case basis after investigating the facts.  However, as discussed above with regard to Plaintiff's motion to strike, Polys has been provided with the information and has concluded that if she had been given all of the facts presented, she would have terminated Plaintiff.  In other words, Polys has considered the specifics of Plaintiff's case and made the decision based on the circumstances of Plaintiff's case.

Plaintiff points to three other nurses who were put on probationary status by the Board but were not terminated.  However, the evidence does not indicate that any of these other nurses concealed the information from Defendant.  The license

issues for Elizabeth Griffith and Melanie Bayha occurred while they were working for Defendant and the information was fully disclosed to the Defendant. Jessica Pharr was reportedly very upfront and open about her history and circumstances when Defendant hired her. Thus, the fact that Defendant did not terminate Griffith, Bayha or Pharr does not demonstrate that Defendant would not have terminated Plaintiff upon discovering the after-acquired evidence.

In her reply to the motion to summary judgment, Plaintiff submits evidence that she contends shows that Polys herself was dishonest during her application process.[1]  Polys' prior employment with Catholic Health East, a division of Mercy Medical, reportedly ended by "mutual agreement" after Polys informed the COO that she disagreed with her employer's plans on how to continue to run the facility. (Doc. 72-2, pp. 5-7).  Polys felt it was time for her to go in a different direction because they were at an impasse. (Doc. 72-2, p. 8).  Polys was not asked to resign and she negotiated a severance. (Doc. 72-2, p. 7).  Polys had not been disciplined or received any negative performance evaluations. (Doc. 72-2, p. 8).  On her Employment Application with the Defendant Company, Polys stated that she left Catholic East "[t]o pursue other interests." (Doc. 72-2, p. 40).  According to Polys she

---

[1] The Court notes that it is generally improper to raise new arguments for the first time in a reply brief. See Randolph v. J.M. Smucker Co., 303 F.R.D. 679, 698 n 19 (S.D. Fla. 2014)  ("This Court has noted that it "cannot consider new arguments raised for the first time in a reply brief." Powell v. Carey Int'l, Inc., 490 F.Supp.2d 1202, 1206 (S.D. Fla. 2006) (citing Herring v. Secretary. Dept. of Corrections, 397 F.3d 1338 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'")). However, the Court will discuss the evidence since the newly submitted evidence is offered as rebuttal to support Plaintiff's original argument that Defendant's employment practices indicate Defendant would not fire Plaintiff.

explained in her interview all the information they needed to consider hiring her and feels she was up front with everything that she told them. (Doc. 72-2, pp. 26-28).  However, on a request for reference form, Polys stated that the reason for leaving was "[r]estructure, change and organization needs." (Doc. 72-2, p. 44).  Polys testified that it was a mistake and that she accidently put down the reason she left another company, Centegra. (Doc. 72-2, pp. 31-32). Polys had previously been terminated from Centegra as a result of a restructuring when her position was eliminated. (Doc. 72-2, pp. 8-9).

The Court does not find that Ms. Polys' circumstances are sufficiently analogous to Plaintiff's alleged circumstances to demonstrate as a matter of law that Defendant would not have terminated Plaintiff if it had discovered the after-acquired evidence.  Ms. Polys admits that the reason she stated that she left Catholic Health East in the reference form was incorrect.  However, Polys contends the incorrect reason was merely an error.  Moreover, the reported true reason Polys left was because she chose to leave and she fully explained all of the circumstances during her interview process.  More importantly, there is evidence that Polys was up front about her employment history and that all of the correct information concerning Polys' employment history was provided to the Defendant during the interview process.  The evidence does not show that Polys hid or concealed from the Defendant Company any disciplinary actions, terminations, or regulatory history.

Plaintiff also argues that there is no evidence that any false or misleading information she provided constituted an intentional deceit.  However, even if the

Court could conclude that there was no evidence of Plaintiff's intent, application of the after-acquired evidence doctrine does not require a showing that the wrongdoing was intentional.  See e.g. Cook v. Shaw Indus., 953 F. Supp. 379, 385 (M.D. Ala. 1996) (finding that even if the omission was unintentional, the plaintiff would have been terminated); Yeary v. Florida Dep't of Corr., 1997 WL 284648, at *6 (M.D. Fla. May 13, 1997) (finding after-acquired evidence doctrine applies even if the misrepresentations were not intentional).  Accordingly, in light of all of the above, the Court finds that looking at the evidence in the light most favorable to Defendant, there is a genuine issue of material fact regarding whether Plaintiff committed a wrongdoing of such severity that the Defendant would have terminated Plaintiff had it known of the misconduct.

## CONCLUSION

For the reasons stated above, Plaintiff's motions for partial summary judgment (Doc. 62) and motion to strike (Doc. 69) are **DENIED**.

**DONE** and **ORDERED** this 11th day of August, 2016.

/s/ Callie V. S. Granade
**SENIOR UNITED STATES DISTRICT JUDGE**